[Civ. No. 3666. Fourth Dist. Aug. 21, 1947.]

RITCHIE CALHOUN, Appellant, v. SAMUEL WILSON CALHOUN, Respondent.

298

Clarence Harden and Henry F. Walker for Appellant.

Monroe & McInnis for Respondent.

GRIFFIN, J.—Plaintiff and defendant, after several years of married life, separated in November, 1939. On January 3, 1941, defendant herein brought an action for divorce in San Diego County, alleging wilful desertion by his wife. The court found that Mr. Calhoun had deserted his wife without cause and denied the divorce in a decree entered November 13, 1941. In February, 1943, Mr. Calhoun left California and on March 21, 1943, he filed an action for divorce in Nevada under section 9467.06, Nevada Statutes, on the ground that the parties had lived separate and apart without cohabitation for more than three years. Under that section a cause of action arose without regard to either party's fault or wrongdoing. Mrs. Calhoun was personally served with summons and complaint in California. She did not appear and a divorce was granted to Mr. Calhoun on April 22, 1943. That decree became final. Thereafter, on August 17, 1943, Mrs. Calhoun filed an action for *injunction, separate maintenance,* and sought a division of the *community property.* She at-

tacked the validity of the Nevada divorce decree. (See *Calhoun* v. *Calhoun*, 70 Cal.App.2d 233 [160 P.2d 923].) The trial court there found and concluded that the Nevada court, although it did not acquire jurisdiction over the person of plaintiff, had jurisdiction of the subject matter of the divorce and that the decree as entered was entitled to full faith and credit; that the parties ceased to be husband and wife at the time of the entry thereof; and that plaintiff was not entitled to an award of separate maintenance. That judgment has become final.

These general facts are more specifically alleged in three counts of plaintiff's complaint herein. She now seeks alimony from defendant in the sum of $150 per month commencing as of April 27, 1943, the date of the Nevada divorce decree. A general demurrer was interposed and overruled. After answer filed and on trial, after the first witness was sworn, defendant immediately objected to the introduction of any evidence on the ground that the plaintiff failed to state a cause of action. The court sustained the objection, refused to take any evidence, and entered a formal judgment of dismissal. The appeal comes to us on a settled statement in lieu of both reporter's and clerk's transcripts.

A motion to exclude evidence based on insufficiency of the complaint, as here made, is in the nature of a general demurrer to the complaint and must be determined on that principle. (*Venturi* v. *Zurich General A. & L. Co.*, 14 Cal.App. 2d 89 [57 P.2d 1002]; *Rannard* v. *Lockheed Aircraft Corp.*, 26 Cal.2d 149, 151 [157 P.2d 1].)

Plaintiff first argues from the facts stated in the complaint that the Nevada decree was based on constructive or substituted service and that that court at no time acquired jurisdiction over plaintiff's person, citing *Pennoyer* v. *Neff*, 95 U.S. 714 [24 L.Ed. 565]; *Matter of McMullin*, 164 Cal. 504 [129 P. 773]; *Davis* v. *Davis*, 70 Colo. 37, 41 [197 P. 241]; 2 Nelson on Divorce and Separation, pp. 896-898; and *Esenwein* v. *Commonwealth of Pennsylvania*, 325 U.S. 279 [65 S.Ct. 1118, 89 L.Ed. 1608, 157 A.L.R. 1396].

It is further argued that a foreign divorce decree, although fully valid insofar as the determination of the marital status is concerned, does not necessarily constitute a defense to an action for alimony, citing the concurring opinion of three justices in *DeYoung* v. *DeYoung*, 27 Cal.2d 521, 527 [165 P.2d 457], in which it is said:

"Separate maintenance differs from alimony in that it presupposes a continuing marital status. The right to it cannot be established without proof that such status is existent as of the time of trial. Proof of prior dissolution of the marriage is, therefore, a complete defense to such an action."

". . . rights to support in the form of alimony *as of the date of the divorce* (which alimony may continue into the single status), at least where there is no adjudication of fault . . . may well be subject to judicial determination in a subsequent action in a proper forum having personal jurisdiction over both parties. Such an action, being based on the marital status as it existed prior to the divorce, would have to be instituted before the statute of limitations or laches barred it."

From these and other authorities cited, plaintiff concludes that her right to alimony, a right *in personam,* could not be and was not determined or destroyed by the ex parte Nevada decree; that an action for alimony is *in personam* and not *in rem,* and that since a wife could not obtain alimony in a suit brought by her upon constructive service alone, the law should not and does not then allow the husband to bar the wife's right to alimony in an action based upon such service; that to hold otherwise would be contrary to and violative of the due process requirements of the federal Constitution.

Respondent argues that since the husband established a bona fide residence in the State of Nevada and there secured a divorce from his wife, based upon summons served upon her within the State of California, that judgment has become final as to the marriage status and the wife may not thereafter maintain an action against the husband for alimony, since the parties are no longer husband and wife, citing *Calhoun* v. *Calhoun, supra; Cardinale* v. *Cardinale,* 8 Cal.2d 762 [68 P.2d 351] ; *Crouch* v. *Crouch,* 28 Cal.2d 243 [169 P.2d 897]. While we may be impressed with the supporting authorities cited and the general conclusion reached by the three concurring justices in that portion of their opinion in *DeYoung* v. *DeYoung,* wherein they state that in a divorce action obtained in a foreign state based upon constructive service, the court there may have authority to adjudicate the marital status (*in rem*) of the person residing in that state but has no jurisdiction to adjudicate away (*in personam*) any of the then vested property rights of the absent spouse who does not reside in such state, who is not personally served with process in that state, and who does not appear in the action ; and that it would

then follow that the personal rights of the spouses in property not located within the jurisdiction of the court of foreign jurisdiction remain subject to litigation in the proper forum, we do not deem it necessary in this proceeding to determine that question.

Defendant Calhoun did obtain a decree of divorce in Nevada based upon substituted service, which decree became final insofar as it affected the marital status. The ground for obtaining the divorce was the fact that the parties lived separate and apart without cohabitation for more than three years. Who was at fault was not determined nor was it necessary to determine that question in that action under the law of Nevada. ▮ Plaintiff's right to support, if such right existed at the time, was a right existing by reason of the marital status or contract and may be classified as a property right. (*Ponsonby* v. *Sacramento Suburban Fruit Lands Co.*, 210 Cal. 229 [291 P. 167]; Civ. Code, §§ 14, 155; *Crouch* v. *Crouch, supra,* p. 262.) Such right to support, if existent, is enforceable (1) under section 137 of the Civil Code, where the Legislature has provided, by technical description, the manner in which the husband or wife may be required to pay *as alimony* any money necessary for his or her support, as the case may be, *when an action for divorce is pending,* and for *permanent support without divorce.* The section is entitled "Alimony Pendente Lite." (2) Section 139 of the Civil Code provides that where a divorce is granted for an *offense of the husband* the court may make "suitable allowance to the wife *for her support.*" The Legislature did not classify this latter form of support as alimony in that section although it has been referred to as such by the courts. See *Ex parte Spencer,* 83 Cal. 460 [23 P. 395, 17 Am.St.Rep. 266], wherein it is held (quoting from the syllabus) that:

"The permanent allowance provided for by section 139 of the Civil Code is not, properly speaking, permanent alimony, nor is it merely a substitute for the wife's interest in the common or separate property of the husband, but is allowed by way of compensation for a wrong done to the wife."

The final divorce decree obtained in Nevada did not find that the divorce was granted for any wrong that was done to the wife, but merely determined that the parties had been separated for more than the three-year period without cohabitation.

As there was admittedly community property within this state which had not been disposed of by the Nevada decree,

plaintiff had property rights other than her claimed right for permanent support. It has been repeatedly held that where a divorce is obtained in a foreign state upon substituted service, and there remains community property within this state not disposed of by the parties or any court of competent jurisdiction, the parties thereafter hold such property as tenants in common, if the divorce is granted for any cause other than adultery· or cruelty, and each becomes the owner of an undivided one-half interest in such property, and *if not estopped*, the respective rights of the parties may be enforced in an independent action. (*Lorraine* v. *Lorraine*, 8 Cal.App. 2d 687 [48 P.2d 48] ; *Taylor* v. *Taylor*, 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074] ; 5 Cal.Jur. p. 360, § 32; 3 Cal.Jur. 10-Yr.Supp. 673, § 153.)

In the settled statement on appeal, respondent contends, in addition to the previous contentions mentioned, that plaintiff seeks in this action again to have adjudicated and determined the same issue which was expressly adjudicated against her in a previous action (*Calhoun* v. *Calhoun, supra*), and that the judgment and decisions of this court and the ruling of the Supreme Court denying a hearing constituted an adjudication and determination of the rights of the parties hereto and constituted an adjudication that the plaintiff is not entitled to recover alimony for her support. This point is referred to in both appellant's and respondent's briefs. We will therefore consider this question first.

 It is not necessary to allege facts in a complaint of which the court will take judicial notice (*French* v. *Senate,* 146 Cal. 604 [80 P. 1031, 2 Ann.Cas. 756, 69 L.R.A. 556]).

 This court will take judicial notice of the former proceedings had before this court (*Calhoun* v. *Calhoun, supra*). The record on appeal in the former action shows that it was brought by the wife for the purpose of obtaining permanent support (denominated separate maintenance) and for the purpose of determining property rights of the parties. The action was based upon the same set of facts as here presented. The parties in the former and present actions are the same. Under such circumstances it has been held that this court may take judicial notice of other proceedings in the same court bearing generally upon the same subject, between the same parties. (*Gay* v. *Gay*, 146 Cal. 237, 241 [79 P. 885]. See, also, *Sewell* v. *Johnson*, 165 Cal. 762 [134 P. 704, Ann.Cas. 1915B 645] ; 10 Cal.Jur. p. 728, § 52.)

With these rules in mind, we will proceed to analyze the allegations of the complaint. Plaintiff knew, at the time she filed her previous action (*Calhoun* v. *Calhoun, supra*), that defendant had obtained a decree of divorce in Nevada on the grounds stated, and that that decree had become final and on its face was a valid and binding decree as to the marital status of the parties. She likewise knew and alleged that the parties had property rights within this state, both separate and community, that were not determined, and sought permanent support for herself. Plaintiff, knowing all of these facts, filed the action referred to in her complaint (*Calhoun* v. *Calhoun, supra*), and by its very terms she there sought relief, in an action entitled "COMPLAINT FOR SEPARATE MAINTENANCE, TO SET ASIDE JUDGMENT, FOR AN INJUNCTION, AND FOR OTHER RELIEF." She then proceeded to allege the necessary jurisdictional facts, that there were no children the issue of the marriage, that the parties owned certain described community property, that defendant husband owned certain described separate property, and that defendant was able to "support" plaintiff.

As a second cause of action she alleged certain facts in reference to a prior action instituted on January 3, 1941, by the husband, which action was contested by the wife, and the ultimate determination thereof in the wife's favor; that the husband later, in 1943, instituted the divorce proceedings in Nevada and she claimed that the decree obtained was void; that the defendant Calhoun intended to dispose of "all property of every kind and character owned by him" in California, with the intention of depriving plaintiff of "support and maintenance," and if accomplished her "right to support and maintenance" would be imperiled and probably lost. The prayer for relief was for a "decree of separate maintenance," for a division of the community property, a restraining order, for costs, and "general relief."

Defendant answered and denied that the parties were husband and wife; claimed the validity of the Nevada decree; that he had remarried; that he became a bona fide resident in that state, and was still residing there when this action was instituted. He alleged that the property described in plaintiff's complaint was community property; that he returned to California merely for the purpose of attempting to negotiate and secure a division of the properties formerly owned by them, and was then served with a complaint and summons in that action.

In his cross-complaint he set up the Nevada decree as a defense, alleged that the parties acquired their residence, household furnishings and certain other described properties mentioned, as community property, and that it had not been divided between the parties; that plaintiff refused to recognize the validity of the Nevada divorce and now is asking "for *separate maintenance or alimony*"; that this is a dispute between the parties in that Mrs. Calhoun "claims to be the wife of cross-complainant" and "claims to be entitled to *support or alimony* from him." The prayer of the cross-complaint seeks a decree "adjudicating the marital status" of the parties and "also making proper adjudication of their rights in and to the property acquired by them," and for general relief.

The court found that Mr. Calhoun became and was a bona fide resident of Nevada; that the decree of divorce rendered by the court there was valid as to the marital status; that no fraud was practiced by him; and that the parties still owned the described real and personal community property. It awarded to plaintiff the dwelling house and furnishings and certain other community property, together with an award of $1,000 cash (which was immediately paid into court by the defendant), and an automobile. The court then found that said properties and monies fairly equaled the value of plaintiff's community interest. It then concluded that "plaintiff is entitled to no other relief in this action."

The judgment as entered recites the fact that the property thus awarded is "in lieu of her share of the community property," and that which is awarded to plaintiff is "in full satisfaction of all of her community interest and that the remaining property of every nature, standing in defendant's name, shall be his sole and separate property" and that plaintiff "recover no other or further relief from defendant."

There is a stipulation in that record, between the parties, reciting that "Whereas, the above entitled cause came on for trial upon the issues claimed by the pleadings" and "Whereas, the parties are satisfied with the division of the property" and that the acceptance of the money and property shall not operate against her in her right to appeal from the remaining portion of the judgment.

It appears to us that notwithstanding any possible legal right to alimony plaintiff may have had at that time, she should

now be estopped from again prosecuting this action for claimed permanent alimony, for several reasons.

(1) Plaintiff has accepted her proportionate share of the community property without complaint. In connection with this equitable distribution of the community property the court denied her permanent support and maintenance. If, after having accepted her share thereof, she should now be permitted to obtain permanent alimony from defendant it would be but an after-acquired means of obtaining and securing for herself his one-half of the community property in the form of a judgment for permanent alimony under sections 141 and 142 of the Civil Code.

(2) It further appears that plaintiff sought permanent support (denominated separate maintenance) from defendant in the previous action, knowing full well that a final decree of divorce, legal on its face, had been obtained in Nevada, and knowing that the burden was upon her to establish its illegality before she could obtain separate maintenance. If she elected her remedy by seeking such separate maintenance rather than relying upon the validity of the decree and seeking alimony, she should now be estopped in this action from again pursuing the remedy she may have been entitled to seek at that time. This general rule is stated in 10 California Jurisprudence, page 1, section 1, to the effect that:

". . . a party having two or more coexisting modes of procedure and relief allowed by law on the same state of facts, one of which is inconsistent with the other, may not pursue both but must choose between them, and when, with knowledge of the facts, he has clearly elected to proceed upon one, he is thereby bound and will be estopped from invoking the other. . . . This doctrine is generally regarded as being an application or extension of the law of estoppel. And it has been said that it rests also upon one of the underlying or fundamental concepts of the reformed procedure, to wit, the prevention of a multiplicity of suits." (See, also, *Sanguinetti* v. *Sanguinetti,* 9 Cal.2d 95, 99 [69 P.2d 845, 111 A.L.R. 342].)

(3) Furthermore, from an examination of the facts pleaded in the instant complaint and the settled statement on appeal, it appears that such *property rights* as plaintiff and defendant then possessed, whether community or otherwise, and whether such rights arose from the marriage contract, by way of a right to separate maintenance or claimed right to alimony, were disposed of in the former action. (*Brown* v.

*Brown,* 170 Cal. 1, 5 [147 P. 1168] ; *Metropolitan Life Insurance Co.* v. *Welch,* 202 Cal. 312, 318 [260 P. 545].) A recitation of the pleadings, findings and judgment are more than convincing that any claim plaintiff might have had for permanent support, whether by way of alimony or separate maintenance, was considered and disposed of by the trial court. From defendant's answer and cross-complaint it is clear that he did not know whether plaintiff was seeking separate maintenance or alimony under her pleadings. He defended his action predicated upon either ground and asked for a clarification and an adjudication of any claimed rights she may have had, either for permanent support *or* alimony. The question of her permanent support *or alimony* was directly raised by those pleadings and the court found that plaintiff was not entitled to any relief in this respect.

Judgment affirmed.

Barnard, P. J., concurred.

A petition for a rehearing was denied September 18, 1947, and appellant's petition for a hearing by the Supreme Court was denied October 16, 1947. Carter, J., Traynor, J., and Schauer, J., voted for a hearing.